IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **REGINALD POWE,** }<br>}<br>       **Plaintiff,** }<br>}<br>v.  }<br>}<br>**MICHAEL J. ASTRUE,** }<br>**COMMISSIONER OF** }<br>**SOCIAL SECURITY,** }<br>}<br>       **Defendant.** } | Civil Action No.: 2:12-CV-01116-RDP |

## MEMORANDUM OF DECISION

Reginald Powe ("Plaintiff") brings this action pursuant to Section 1631(c)(3) of Title XVI of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. § 1383(c)(3). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

This action arises from Plaintiff's application for Title XVI SSI, dated May 21, 2008, alleging disability beginning on September 1, 2005. (Tr. 11, 96). Plaintiff later amended that date to the date of the protective filing, May 21, 2008. (Tr. 30, 103). Plaintiff's application was initially denied by the Social Security Administration on August 22, 2008. (Tr. 48-49). On September 2, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 57). Plaintiff's request was granted and a hearing was held on March 2, 2010. (Tr. 24-47,

73).  Plaintiff was represented by counsel during the hearing and a vocational expert ("VE") was present at the hearing to respond to the ALJ's hypotheticals.  (Tr. 42-46).

In his decision, dated March 19, 2010, the ALJ determined that Plaintiff was not disabled within the meaning of § 1614(a)(3)(A) of the Act since May 21, 2008. (Tr. 11-18).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff was fifty-one years old at the time of the hearing. (Tr. 31).  Plaintiff alleges he had been disabled since May 21, 2008, suffering from back pain, pain in both legs, and ulcers. (Tr. 107, 109).  Plaintiff alleges his back pain was caused by lifting heavy materials while working on a poultry farm in 2005, and the leg pain and ulcers were caused from taking excessive amounts of Tylenol. (Tr. 107).  Plaintiff has worked at various jobs, including his time as a machine shop laborer and a poultry plant laborer. (Tr. 98-100).

Prior to his alleged period of disability, Plaintiff received treatment primarily from the Correctional Medical Systems in Alabama. (Tr. 138-294).  The records from those facilities contain statements of the possible presence of ulcers, with the first indication dating back to December 1987. (Tr. 157, 212, 222, 243).  Other than intermittent indications of cocaine and heavy alcohol use by Plaintiff prior to 2005, these records seem unremarkable. (Tr. 143, 150, 195, 208, 212, 222, 249, 290).  Plaintiff visited the emergency room at Cooper Green Hospital once prior to his alleged period of disability, in August 2007. (Tr. 300).  Plaintiff complained of back pain and was discharged without further diagnosis. (Tr. 300-301).

During his alleged period of disability, Plaintiff was seen by Cooper Green Hospital Emergency Room doctors on three separate occasions, by a Carraway Methodist Hospital

physician once, and by Dr. Jeremy Allen, a consultative examiner, once. (Tr. 302, 317, 321, 326, 335). Plaintiff was first seen by Dr. Bobby Lewis on June 22, 2008, complaining of back, face, and neck pains after being kicked by assailants during an alleged assault. (Tr. 303-305). Other than reports of bruising and tenderness, x-rays showed Plaintiff did not suffer from any fractures or internal injuries. (Tr. 306, 312).

Plaintiff did not return to the hospital until September 5, 2009, when he complained to Dr. Mario Papagni of back pain and his "legs giving out." (Tr. 321). Plaintiff was released in "stable" condition after being prescribed Tramadol, a pain killer. (Tr. 323). Five days after being prescribed Tramadol, Plaintiff returned to Cooper Green and was seen by Dr. Raymond Boughton. (Tr. 317). Plaintiff reported having no relief from his prior symptoms of lower back pain, which he stated had been affecting him for approximately two months.[1] (Tr. 317). X-rays revealed narrowing of vertebra consistent with a rudimentary form of degenerative disk disease. (Tr. 319). However, Dr. Boughton reported in his physical examination "[s]traight leg raise normal . . . [n]o lower back pain, [n]o [m]uscle spasm, [n]o [p]ara-[v]ertebral tenderness, [n]o [v]ertebral tenderness." (Tr. 318). Plaintiff was released and prescribed four pain killers to be taken as needed, being told to return to the emergency room if his condition worsened or as needed. (Tr. 320).

Plaintiff was next seen on January 11, 2010 in the emergency room, again complaining of lower back pain. (Tr. 335-36). Treating physician Dr. Willard Mosier noted "lower back tenderness, [m]uscle spasm, [s]traight leg raise normal (ROCK HARD SPASM)," and that the current symptoms seem to "mirror the severe frigid temperatures." (Tr. 336-37). Plaintiff was released after being given muscle relaxants and steroid analgesics. (Tr. 337).

---

[1] Dr. Boughton initially noted that Plaintiff had been experiencing back pain for approximately two months, but later reports the back pain was reoccurring for four to five months. (Tr. 317-18).

3

As part of his disability claim assessment, Plaintiff was required to attend a state ordered consultative examination. (Tr. 313). Plaintiff failed to attend the scheduled examination. (*Id.*). Instead, Plaintiff was examined on his own behalf by Dr. Jeremy Allen on February 25, 2010. (Tr. 135, 326). Dr. Allen reported Plaintiff had a normal level of pain at 8/10, associated with aching, burning, numbness, and tingling, that was only relieved by pain medication or changing positions while sitting. (Tr. 326). Further, Dr. Allen found Plaintiff could only stand ten to fifteen minutes at a time before having to sit down and was unable to squat or bend over. (Tr. 326-27). A spinal examination showed "extreme loss of the usual lumbar lordosis . . . and spasms throughout." (Tr. 327). According to Dr. Allen, Plaintiff has a 3/10 capacity for being able to sit during an eight hour day, a 0/10 capacity for being able to stand and walk during an eight hour day, and can only lift five pounds occasionally or less. (Tr. 328).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 416.920(b). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §§ 416.974, 416.975. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 416.909.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 416.920(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 416.920(f).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 416.920(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 416.912(g), 416.960(c).

Here, the ALJ determined that: 1) Plaintiff did not engage in substantial gainful activity since the onset of his alleged disability; 2) Plaintiff does have a medically determinable impairment—namely, degenerative disk disease—that more than minimally affects his ability to perform work-related activities; but that 3) Plaintiff's medically determinable impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 13-14).

According to the ALJ, Plaintiff's subjective complaints and Dr. Allen's opinions concerning the intensity and limiting effects of Plaintiff's symptoms are inconsistent with the

medical evidence of record. (Tr. 15-16). The ALJ determined that Dr. Allen's findings of extreme lumbar lordosis, decreased sensation, and loss of lower extremity strength were inconsistent both with x-ray evidence from five months prior to the examination, and with a physical examination merely one month before that revealed while Plaintiff suffered from back tenderness, all other leg and extremity testing was normal. (Tr. 16). Further, despite Plaintiff's testimony of bleeding ulcers, depression, right hand pain, and possible hallucinations, the ALJ found no recent medical records reflecting any diagnosis or treatment for these impairments. (Tr. 16).

After consideration of the medical evidence on record, the ALJ found that Plaintiff retains the RFC to perform a reduced range of light work, as defined in 20 C.F.R. § 416.967(b), and has the following limitations: he can lift and carry up to twenty pounds occasionally and ten pounds frequently; during an eight hour workday, he can sit, stand, and walk a total of six hours, but must be able to exercise a sit/stand option; occasional ability to crouch and climb stairs and ramps and frequent ability to balance, stoop, grip, and perform fine and gross manipulation with the right upper extremity; unlimited ability to push/pull and no limitations of the left hand; can never climb ladders, ropes, or scaffolds and must avoid concentrated exposure to hazardous machinery and unprotected heights; and no communicative or visual limitations, but experiences mild to moderate pain which is reasonably expected to impose mild to moderate limitations on his ability to work. (Tr. 14).

In determining whether Plaintiff could perform a significant number of jobs in the national economy despite his limitations, the ALJ posed several hypotheticals to the VE who was present at the hearing. (Tr. 42-46). In response to the above mentioned limitations, the VE testified that while Plaintiff would be unable to perform his past work, he would be able to

perform a significant number of jobs in the national economy. (Tr. 43-45). The VE listed two examples of light work Plaintiff could perform: an assembler and an automatic machine tender. (Tr. 45). The VE also gave an example of sedentary work Plaintiff could perform, testifying he could work as a table worker. (*Id.*).

The ALJ concluded Plaintiff is unable to perform his past relevant work and his ability to perform all or substantially all of the requirements of the full range of light work is impeded by additional limitations. (Tr. 17). However, in assessing the VE's testimony, the ALJ determined that Plaintiff can perform a significant number of jobs in the national economy despite the above-mentioned limitations. (Tr. 17). Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act and therefore is not entitled to a period of disability. (Tr. 18).

### III.     Plaintiff's Argument for Reversal or Remand

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, vacated and reversed, or in the alternative, remanded for further consideration. (Pl.'s Mem. 10-11). Although Plaintiff has divided his discussion into two topics, the court has carefully reviewed Plaintiff's brief and found that he actually has raised four specific assertions: (1) "[Plaintiff's] RFC would better comport with sedentary work which would lead to a finding of disability under the Medical Vocational Rules (MVR), specifically Rule 201.09" (Pl.'s Mem. 6); (2) "[t]he ALJ's sit/stand option does not comply with [Social Security Ruling ("SSR")] 83-12 which requires the amount of time spent in each posture . . . be delineated" and "absent clarification . . . the VE's testimony was not based on substantial evidence" (Pl.'s Mem. 7-8); (3) the ALJ's determination that "mild to moderate pain" would impose "mild to moderate limitations" in the workplace was not a proper analogy and such broad terms are not vocationally quantifiable in an RFC analysis (Pl.'s

Mem. 8); and (4) the ALJ failed to develop the record after dismissing the consultative physician's opinions and instead should have "obtain[ed] a [medical expert] opinion or at least a [consultative examination] for a contemporaneous [medical source opinion] pursuant to 20 CR 416.919a (b).[2]" (Pl.'s Mem. 10).

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g), 1383(c)(3) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

---

[2] The court assumes that in citing to "20 CR 416.919(a)" Plaintiff is actually referring to 20 C.F.R. § 416.919a(b).

**V.     Discussion**

For the sake of organization, the court has grouped Plaintiff's allegations into two main categories: (a) that the ALJ's RFC findings were not based on substantial evidence and (b) that the ALJ applied improper legal standards.  In his arguments that the ALJ's findings were not based on substantial evidence, Plaintiff has raised the following: (1) Plaintiff's RFC better comports with sedentary work; (2) the ALJ's sit/stand option does not comply with the SSR; and (3) terms like "mild to moderate limitations" are not vocationally quantifiable and thus improper in the ALJ's determination.  In his challenge that the ALJ applied improper legal standards, Plaintiff argues the ALJ failed to develop the record when he did not obtain an additional medical source opinion after rejecting the only consultative examination on record.

> **a. Substantial Evidence Supports the ALJ's Determination that Plaintiff Can Perform Jobs that Exist in Significant Numbers in the National Economy.**

After careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence. Plaintiff's specific arguments are addressed below.

> **1. Plaintiff's RFC Limits Him to a Reduced Range of Light Work, and Not Sedentary Work.**

Plaintiff contends the ALJ erred in determining that his RFC allowed for a reduced range of light work.  Plaintiff argues that instead the ALJ should have found his RFC better comports with sedentary work, which would lead to a finding of disability under Medical Vocational Rule 201.09.  (Pl.'s Mem. 6).

What Plaintiff appears to really be seeking is an independent determination by this court that the ALJ's findings lead to the conclusion that his RFC actually limits him to performing sedentary work. First, as discussed below, Plaintiff's argument that the ALJ's findings regarding his ability to perform more than sedentary work are not supported by substantial evidence is

9

without merit. Second, to the extent that Plaintiff asks this court to make its own findings regarding Plaintiff's RFC, Plaintiff is mistaken about this court's scope of review. This court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Instead, this court is limited to review whether substantial evidence supports the Commissioner's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. 1383(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Therefore, this court will evaluate only whether the ALJ's finding of limited range of light work is supported by substantial evidence.

The Code of Federal Regulations defines light work as that which involves "lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds . . . requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). The ALJ found Plaintiff was capable of lifting up to twenty pounds occasionally and ten pounds frequently and the occasional ability to crouch and climb stairs and ramps. (Tr. 14). The ALJ found Plaintiff able to stand and walk a total of six hours in a workday. (*Id.*). While Plaintiff is correct that an RFC reflective of sedentary work would require a finding of disability under Medical Vocational Rule 201.09, the ALJ's findings clearly appear to fall within the Code of Federal Regulations definition for light work. *See* 20 C.F.R. §§ 416.945(a)(1); 416.967(b).

Plaintiff further contends that because one of the jobs cited by the VE in response to the ALJ's hypothetical was representative of sedentary work, there is additional proof that the AJL's decision restricting Plaintiff to light work is not confirmed by substantial evidence. (Pl.'s Mem. 6). The VE cited three jobs in response to the ALJ's hypothetical: a bench or small parts assembler, an automatic machine tender, and a table worker. (Tr. 45). The *Dictionary of*

*Occupational Titles* classifies the first two as light jobs and the third as sedentary work. *See* Dep't of Labor, *Dictionary of Occupational Titles*, §§ 706.684-022 (assembler), 556.685-082 (automatic machine tender), 739.687-182 (table worker) (rev. 4th ed. 1991). Nonetheless, these two categories of work—light and sedentary—are not entirely distinct. An individual who can perform light work can also perform sedentary work. *See* 20 C.F.R. § 416.967(b). Thus, in order for the ALJ to find a claimant restricted to sedentary work and therefore considered disabled under Medical Vocation Rule 201.09, he must be restricted to *only* sedentary work. The record does not reveal any evidence suggesting that Plaintiff cannot perform the two light jobs identified by the VE; therefore, the ALJ's conclusion limiting Plaintiff to a reduced range of light work is properly based on substantial evidence.

### 2. The ALJ Did Not Commit Error by Failing to Specify the Frequency with Which Plaintiff Could Alternate Between Sitting and Standing.

Plaintiff argues that the ALJ erred in his hypothetical posed to the VE by not delineating the frequency with which he could sit and stand. (Pl.'s Mem. 7-8). Plaintiff states the ALJ's "sit/stand option d[id] not comply with SSR 83-12." (Pl.'s Mem. 7). SSR 83-12 provides that in most instances, an individual who requires a sit/stand option and does not have a degree of choice in the option at work will lead to a finding of disability. *See* SSR 83-12. An individual who has a job where he can ordinarily stand or sit at will, however, typically will not be found disabled. *Id.* Plaintiff posits that because the degree of choice clarification was absent in the ALJ's hypothetical, the ALJ's determination was not based on substantial evidence. (Pl.'s Mem. 8).

Initially, Plaintiff is correct in his assertion that an individual without a degree of choice in his ability to sit or stand usually is found to be disabled. Further, the VE must be able to base his occupation identification on proper information regarding a claimant's limitations. In order

for the VE to properly identify a claimant's possible occupations, the ALJ "must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1998). Here, the ALJ listed completely all of Plaintiff's limitations and impairments in his hypothetical to the VE. (Tr. 44). The ALJ did not, however, explicitly distinguish between a degree of choice for the ability to sit and stand, instead only stating Plaintiff would "need a sit/stand option." (Tr. 44).

While Plaintiff accurately states the ALJ was required to fully develop the hypothetical regarding all of his impairments, his argument regarding the failure to include the degree of choice to sit or stand misses the mark. The Eleventh Circuit has ruled that the failure to state the degree of choice in a hypothetical does not affect a VE's determination. When an ALJ fails to specify the frequency of a claimant's need to change position, "the reasonable implication of the ALJ's description [is] that the sit/stand option would be at [claimant's] own volition." *Williams v. Barnhart*, 140 F. App'x 932 (11th Cir. 2005).[3] A reasonable understanding of the ALJ's finding is that Plaintiff "required a job that would allow him to perform the duties of the position by either sitting or standing based on his volition." *Emory v. Astrue*, 2013 WL 1010660, *24 (N.D.G.A. 2013). Thus, the VE accurately identified three occupations Plaintiff could perform when able to exercise a degree of choice in his sit/stand option. (Tr. 45). The court finds the ALJ did not err in relying on the VE's testimony.

Finally, Plaintiff argues that absent clarification of the sit/stand option in the hypothetical, the "VE's testimony was not based on substantial evidence." (Pl.'s Mem. 8). Again, Plaintiff's argument is outside this court's scope of review. This court determines whether the ALJ's

---

[3] Although this unpublished decision is not binding on this court, its reasoning is correct.

12

determination is based on substantial evidence. The question of whether the VE's testimony is based on substantial evidence is not at issue before this court.

### 3. The ALJ Did Not Commit Error in Using the Term "Mild to Moderate Limitations" in his RFC Finding.

Plaintiff also asserts the ALJ's determination of "mild to moderate pain would impose mild to moderate limitations upon his ability to work" was improper. (Pl.'s Mem. 8). Specifically, Plaintiff argues the ALJ's finding of "mild to moderate limitations applied across the board to all . . . work related functions . . . [is not] vocationally quantifiable" and that limitations must be measured in terms of "occasional or frequent" under SSR 83-10. (*Id.*). There are at least two problems with this argument. First, the ALJ is afforded significant latitude in determining a claimant's RFC. Second, even if the court were to accept Plaintiff's argument that exact terminology is required, the ALJ measured Plaintiff's limitations through fractions of the workday.

The ALJ is afforded significant latitude in determining a claimant's RFC based on all relevant evidence of a claimant's abilities and limitations. *See Beech v. Apfel*, 100 F. Supp. 2d 1323, 1330 (S.D. Ala. 2000). In making a determination, the ALJ may use a VE to offer expert testimony regarding limitations imposed by a claimant's impairments. *See* 20 C.F.R. § 416.960(b)(2). Here, the ALJ asked the VE to provide examples of jobs Plaintiff could perform based on his limitations. The ALJ expressly stated in his hypothetical that the VE should consider Plaintiff's "mild to moderate pain" and impairments. (Tr. 44). The VE had the opportunity to ask for clarification of the term "mild to moderate pain" or any of the hypothetical limitations if unclear. He did not. (Tr. 44-46). Thus, the ALJ could make a determination based upon the VE's testimony regarding Plaintiff's mild to moderate pain. The ALJ's decision analogizing "mild to moderate pain" to "mild to moderate limitations" does not seem

implausible. In fact, it appears entirely justified that the ALJ, in his role in determining Plaintiff's full range of limitations, could employ similar terminology to quantify not only Plaintiff's level of pain but his level of limitations as well.

Plaintiff's assertion that the ALJ's RFC determination is barred by SSR 83-10, which measures limitations in terms of fractions of the work day, does not counter the ALJ's finding. SSR 83-10 states that some limitations should be measured in fractions of the work day, such as frequent or occasional. *See* SSR 83-10. However, Plaintiff is completely off base in his argument as the ALJ did define Plaintiff's RFC with sufficient fractional limitations. The ALJ found Plaintiff could "lift and carry up to twenty pounds *occasionally* and ten pounds *frequently*" and has the "*occasional* ability to crouch and climb stairs and ramps and *frequent* ability to balance." (Tr. 14). The ALJ's concluding statement that Plaintiff's mild to moderate pain would impose mild to moderate limitations on his ability to work does not contradict or change his prior determination measuring Plaintiff's limitations in terms of fractions of the work day. In fact, it appears entirely irrelevant on appeal. This court finds no legal authority in the SSR or in case law that requires the ALJ to define every statement in his RFC determination in terms of fractional units. The ALJ's statement of mild to moderate limitations was at worst harmless error as related to his ultimate decision.

### b. The ALJ Did Not Fail to Develop the Record in Declining to Request Additional Medical Source Opinions.

Finally, Plaintiff argues that in dismissing the medical opinion from the only consultative examination, the ALJ erred in failing to develop the record by obtaining further medical opinions. (Pl.'s Mem. 10). Plaintiff states an additional medical opinion was "especially compelling in light of the fact that the ALJ found an RFC for less than the full range of light work." (Pl.'s Mem. 10).

Plaintiff properly notes that because the ALJ has a duty to develop a full and fair record, "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *See Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). The threshold consideration for the court to determine is when an ALJ needs a consultative examination in order to make an informed decision. An ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 493 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *see also* 20 C.F.R. § 416.919a(b).

As the following examples indicate, the record contains more than sufficient evidence for the ALJ to have made his decision. Extensive reports from Plaintiff's visits to Cooper Green and Carraway Methodist Hospitals are documented. (Tr. 300-12, 317-25, 335-38). Plaintiff's first record of back pain is from Cooper Green Emergency Room on August 30, 2007, when his treating physician noted Plaintiff complained of back pain and released him without further diagnosis. (Tr. 300-301). On June 22, 2008, reviewing physician Dr. Bobby Lewis reported Plaintiff was allegedly assaulted and complained of back and neck tenderness as a result of the assault. (Tr. 303-305). While Plaintiff showed some inability to perform full extension and flexion of his upper left extremity, all other physical examinations and x-rays were unremarkable. (Tr. 305-306, 311-12). Plaintiff was not seen again until September 5, 2009, when he complained to Dr. Mario Papagni at Cooper Green Hospital that he was suffering from "ankle and back pain." (Tr. 321). Dr. Papagni reported after his physical examination that Plaintiff had muscle spasms in his back and again released him without any formal diagnosis.

(Tr. 322). Plaintiff returned to Cooper Green five days later complaining of continued pain, stating that his lower back pain had been occurring for approximately two months.[4] (Tr. 317). Dr. Raymond Broughton noted "[s]traight leg raise normal, [n]o CVA tenderness, [n]o [l]ower back pain, [n]o [m]uscle spasm, [n]o [p]ara-vertebral tenderness, [n]o [v]ertebral tenderness" and despite x-rays revealing mild disk narrowing associated with degenerative disk disease, the spine showed only rudimentary changes without any curvature. (Tr. 317-19, 324). There did not appear to be any chronic changes in Plaintiff's condition. Plaintiff's last visit to the hospital was on January 11, 2010, when reviewing physician, Dr. Willard Mosier, determined that despite some muscle spasms and back pain, Plaintiff's straight leg raise and testing of the extremities were normal and that his symptoms simply appeared to be associated with the severe frigid temperatures. (Tr. 336-37).

Nevertheless, it is Plaintiff who bears the burden of proving he is disabled and is "responsible for producing evidence in support of that claim." *Ellison v. Barnhart*, F.3d 1272, 1276 (11th Cir. 2003). *See also* 20 C.F.R. § 416.912(c). Plaintiff had the opportunity to submit further evidence of his disability but failed to do so. Moreover, Plaintiff had the opportunity to be evaluated by the state's consultative examiner, free of charge, but did not appear at the appointed time. (Tr. 313).

Other than medical records reporting back pain on an intermittent basis, Plaintiff has had no ongoing treatment for leg and back problems. Based on this information, the court finds that there is sufficient record evidence for the ALJ to have made an informed decision regarding Plaintiff's RFC without requesting an additional consultative examination. Therefore, as the

---

[4] Dr. Broughton first notes Plaintiff reported only two prior months of back pain, but later in his report states Plaintiff's back pain was reoccurring for four to five months. Even assuming five months of pain, Plaintiff's onset date would be set at approximately April 2009, a full eleven months after his alleged onset date of disability.

16

ALJ was not required to request a consultative examination, the ALJ did not fail in his duty to develop the record.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff Reginald Powe is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___18th___ day of JuneJune, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE